COASTWISE TRANSPORTATION COMPANY *vs.* NEW ENGLAND COAL AND COKE COMPANY.

Suffolk. March 21, 1916. — May 19, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & PIERCE, JJ.

*Charter Party. Contract,* Construction, Performance and breach.

A charter party chartered a certain vessel for "as many successive voyages" as could be made between certain ports, "to run to" a certain date "or until steamer now in process of construction shall be substituted in place of" the vessel chartered. A certain number of days average were to be allowed for loading and discharging, and the charterer was to pay a specified demurrage "for each and every day's detention beyond said time by default of" the charterer.

There also was a provision, "The dangers of the seas and navigation of every kind mutually excepted." The vessel was lost on her seventh voyage thirty-eight days before the "steamer . . . in process of construction" had been substituted. The owner brought an action for demurrage because of detention of the vessel in ports by default of the charterer on the six completed voyages beyond the number of days specified as average. The defendant contended that there could be no recovery because the vessel had not been kept in service continuously between the time when she was reported as ready and the time when the steamer under construction was substituted. *Held*, that the contract was entire and unambiguous and, "dangers of the seas and navigation" being excepted, the plaintiff was excused from performance after the sinking of the vessel and therefore could recover demurrage for the detention of the vessel on the six completed voyages beyond the time allowed by the charter party.

CONTRACT for demurrage alleged to be due under the provisions of a charter party described in the opinion. Writ dated January 23, 1911.

In the Superior Court the case was heard by *Hardy*, J., without a jury. The material facts are stated in the opinion. The judge found for the plaintiff in the sum of $4,819.21; and the defendant alleged exceptions.

*F. D. Putnam*, (*J. A. Locke* with him,) for the defendant.

*A. C. Burnham*, for the plaintiff.

BRALEY, J. The plaintiff's claim for demurrage depends upon the provisions of the charter party, the material provisions of which are as follows: ". . . the said party of the first part [Coastwise Transportation Company] agrees on the freighting and chartering of the whole of the said vessel (with the exception of the cabin and necessary room for the crew and the storage of provisions, sails and cables) or sufficient room for the cargo hereinafter mentioned, unto said party of the second part, [New England Coal & Coke Company] For as many successive voyages from Newport News, and Norfolk, Va. and Baltimore, Md. to Boston or Portland, beginning at the expiration of their present charters to run to Dec. 30th, 1909, or until steamer now in process of construction shall be substituted in place of said schooners, on the terms following: The said vessel shall be tight, staunch, strong and every way fitted for such a voyage, and receive on board during the aforesaid voyage the lawful merchandise hereinafter mentioned. The said party of the second part doth engage to provide and furnish to the said vessel, a full cargo of coal, and to pay said party of the first part, or agent, for the use of said vessel

during the voyage aforesaid Sixty five cents (65c) from Baltimore, Md. and Fifty five cents (55c) from Newport News and Norfolk, Va. to Boston. If ordered to Portland rate of freight on same terms except that vessel shall receive bridge money 3c per ton for each bridge used. If vessel is ordered to Mystic Wharf Boston, the party of the second part is to pay bridge money at the rate of 1c per ton for each bridge used. If vessel is sent to N. E. Coal & Coke Co.'s wharf, Everett, no bridge money is to be paid to vessel per ton of 2240 lbs. Coal to be loaded and discharged free of expense to vessel, but vessel to trim as customary.

"It is agreed that 8 days average (Sundays and Holidays excepted) are to be allowed for loading and discharging, both inclusive, commencing from the time the Captain reports vessel ready to receive or discharge cargo.

"For each and every day's detention beyond said time by default of said party of the second part, or agent, five cents per ton on Bill of Lading weight per day and pro rata for portion of a day shall be paid by said party of second part, or agent, to said party of the first part, or agent. . . .

"The dangers of the seas and navigation of every kind mutually excepted. . . .

"To the true and faithful performance of all and every of the foregoing agreement, we, the said parties, do hereby bind ourselves, our heirs, executors, administrators and assigns, and also the said vessel's freight, tackle and appurtenances, and the merchandise to be laden on board, each to the other, in the penal sum of the estimated amount of this charter; and the vessel holding a lien upon the cargo for freight and demurrage."

*Randall* v. *Sprague*, 21 C. C. A. 334, and cases cited in note 337, 338. *Hagerman* v. *Norton*, 46 C. C. A. 1. See *Hall* v. *Barker*, 64 Maine, 339, 343.

While two of the plaintiff's schooners were chartered, it was agreed "that by the contemporaneous construction of the charter party by the parties, the two schooners were to be treated separately, and there was to be no averaging of time between the two vessels, and the time consumed by the 'William L. Douglas' in no wise affects the rights of the parties in this suit," and that the words "as many successive voyages," meant "as many successive voyages as can be made."

The plaintiff's other vessel, the "Mertie B. Crowley," having completed six round voyages, was lost on her seventh voyage by a peril of the sea, thirty-eight days before the steamer in process of construction had been commissioned or substituted as provided in the charter party. It is the defendant's contention that, the vessel not having kept on sailing continuously between the time when she reported as ready for loading and when the steamer was substituted, no demurrage ever accrued or was due.

But the contract is entire and unambiguous. It is to be construed accordingly, and "the dangers of the seas and navigation" are expressly excepted. The plaintiff did not contract that the vessel should make as many trips as actually could be made within the period if all dangers of the seas or of navigation were excluded, but only promised performance subject to those dangers and exceptions. The judge, before whom the case was tried without a jury, having been warranted in finding on the evidence that neither party had terminated the contract, and there having been no contention that the vessel had not made as many trips as were possible at the time she was wrecked, the vessel had fulfilled all the obligations imposed by the charter party. The plaintiff therefore was entitled to recover demurrage for the voyages which had been completed. *Brown* v. *Hunt*, 11 Mass. 45. *Morgan* v. *Garfield & Proctor Coal Co.* 113 Fed. Rep. 520, 522.

The next question is upon what basis should the amount of demurrage be computed. In compliance with the defendant's sixth request, the judge ruled that under the language of the charter party, "eight days average for loading and unloading, both inclusive," the charterer was entitled to average together the days taken for loading with the days taken for unloading on all trips as a basis for the "determination of whether or not any demurrage was due," and awarded damages for overtime beyond the lay days allowed during each voyage for loading and discharging the cargo. See *Elswick Steamship Co. Ltd.* v. *Montaldi*, [1907] 1 K. B. 626. By this construction it is apparent that the provision giving the vessel "a lien upon the cargo for freight and demurrage" is disregarded. But, the plaintiff not having excepted to the ruling and being satisfied with the finding, it is unnecessary to determine whether the average overtime to secure which the vessel was given a possessory lien should not have

been ascertained for each voyage and the plaintiff's damages correspondingly increased.

The defendant's other requests for rulings in so far as not given or waived at the argument, having rested on its contentions that the demurrage must be so computed as to average the time for discharging and loading on all the voyages the vessel could have made if she had continued in the service until the substitution of the steamer, and that, the vessel having been lost before that time, even if by perils of the sea, the action could not be maintained, were denied rightly. The exception to the exclusion of evidence has been waived and, the defendant having failed to show that it has been prejudiced, the exceptions must be overruled.

<i>So ordered.</i>